**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY, | CIVIL ACTION LAW |
| Plaintiff, | NO. _____ |
| v. | ***JURY TRIAL DEMANDED*** |
| 1155-1157 NORTH FRONT STREET, INC, DBA JJ MELLON, BRYAN MCCORMICK, AND CHRISTOPHER LAKEY, | |
| Defendants. | |

**PLAINTIFF SCOTTSDALE INSURANCE COMPANY'S DECLARATORY
JUDGMENT COMPLAINT**

Plaintiff Scottsdale Insurance Company ("Scottsdale"), by and through its counsel,
Goldberg Segalla, LLP, files this declaratory judgment complaint against Defendants
1155-1157 North Front Street Inc. DBA JJ Mellon ("Front Street"), Bryan McCormick
("McCormick"), and Christopher Lakey ("Lakey") and avers the following:

**I.    Nature Of Action**

1.    Scottsdale brings this coverage action against Front Street, McCormick, and
Lakey seeking a declaration that $25,000 is the maximum limit of insurance under a policy
of insurance issued by Scottsdale to Front Street in connection with the lawsuit captioned:
*Chrisopher Lakey v. Fishtown Tavern, LLC d/b/a Fishtown Tavern, et al.*, Pennsylvania
Court of Common Pleas, Philadelphia County, Docket No.: 240300216 ("Front Street
Action"); and the lawsuit captioned: *Christopher Lakey v. Bryan McCormick*,
Pennsylvania Court of Common Pleas, Philadelphia County, Docket No.: 240402028
("McCormick Action") (Front Street Action and McCormick Action collectively referred

to as "Underlying Actions"). A true and correct copy of the Front Street Action is attached as **Exhibit A**; and a true and correct copy of the McCormick Action is attached as **Exhibit B**.

## II.     The Parties

2.      Plaintiff Scottsdale is a corporation organized under the laws of Ohio with its principal place of business in Scottsdale, Arizona.

3.      Upon information and belief, Defendant Front Street is a corporation organized and existing under the laws of Pennsylvania with a principal place of business at 1155-57 N. Front Street, Philadelphia, PA 19123.

4.      Upon information and belief, Defendant McCormick is an adult individual and is a resident of Pennsylvania.

5.      Upon information and belief, Lakey is an adult individual and is a resident of Pennsylvania and is named as an interested party, so that he may be bound by any order, rulings, or judgment made herein.

## III.    Jurisdiction and Venue

6.      This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

7.      Based upon information and belief, Scottsdale is diverse in citizenship from Front Street, McCormick, and Lakey.

8.      This action involves an insurance coverage dispute between Scottsdale, Front Street, and McCormick, which arises from personal injury actions brought by Lakey.

9.      In the Front Street Action, Lakey generally alleges that he sustained injuries while in Philadelphia, PA.

10.     In the McCormick Action, Lakey generally alleges that he sustained injuries while in Philadelphia, PA.

11.     Scottsdale issued an insurance policy to Front Street.

12.     Upon information and belief, the damages alleged in the Underlying Actions exceed $75,000.

13.     This Court has subject matter jurisdiction pursuant to the Declaratory Judgement Act, 28 U.S.C. § 2201.

14.     Venue in the United States District Court for the Eastern District of Pennsylvania is proper because, upon information and belief, Front Street's principal place of business, as well as McCormick's and Lakey's residency, are located in the Commonwealth of Pennsylvania in a county identified by 28 U.S.C. § 118 and pursuant to 28 U.S.C. § 1391(b)(1) as defined by 28 U.S.C. § 1391(c).

15.     Further, a substantial part of the events giving rise to Scottsdale's cause of action arose in this venue, including delivery of an insurance policy by Scottsdale to Front Street, and the Underlying Actions giving rise to this insurance coverage dispute were filed in Philadelphia County, Pennsylvania. Thus, venue is also appropriate pursuant to 28 U.S.C. § 1391(b)(2).

**IV.     Facts Giving Rise To This Dispute**

   ***A.     The Front Street Action***

16.     On or about March 1, 2024, Lakey commenced the Front Street Action against, among others, 1155-57 N. Front St., Inc. D/B/A J.J. Mallon's and J.J. Mallon's (collectively referred to in Complaint as "J.J. Mallon's"). *See* **Exhibit A**.

17.    It is alleged, at all times relevant, J.J. Mallon's was responsible and liable for the service of alcohol at 36 N. Girard Avenue, Philadelphia, PA. *Id.* at ¶ 18.

18.    It is also alleged that J.J. Mallon's was responsible and liable for the proper hiring, management, training, certification and oversight of security personnel, bartenders, servers, and managers, at 36 W. Girard Avenue, Philadelphia, PA. *Id.* at ¶¶ 19-21.

19.    J.J. Mallon's allegedly had a duty to the public, including Lakey, to comply with and not violate the laws and regulations of Pennsylvania regarding the service of alcohol, including, but not limited to, complying with and not violating the Pennsylvania Dram Shop Act, which prohibits the service of alcohol to visibly intoxicated patrons. *Id.* at ¶¶ 24-25.

20.    J.J. Mallon's also had a duty to the public, including Lakey, to adhere to internal policies and procedures regarding the responsible service of alcohol and the appropriate response to and handling of visibly intoxicated patrons. *Id.* at ¶ 27.

21.    It is alleged, at all times relevant, the Defendants acted individually and by and through their agents, servants, and employees, all of whom were acting within the course and scope of their employment and/or apparent authority with those entities. *Id.* at ¶ 54.

22.    It is alleged, on or about April 16, 2022, Lakey patronized Fishtown Tavern, LLC D/B/A Fishtown Tavern ("Fishtown Tavern"), and while at Fishtown Tavern, Lakey was served an excessive quantity of alcohol. *Id.* at ¶¶ 61-62.

23.    On that same date, it is alleged that Lakey patronized Manpants, LLC D/B/A Johnny Brendas ("Johnny Brendas") and was served an excessive quantity of alcohol. *Id.* at ¶¶ 63-64.

24.    Subsequently, on April 16, 2022, Lakey allegedly patronized J.J. Mallon's located at 36 W. Girard Avenue, Philadelphia, PA. *Id.* at ¶ 65.

25.    While at J.J. Mallon's, Lakey was allegedly served an excessive quantity of alcohol, including while visibly intoxicated, before being permitted to leave the premises without intervention while in a dangerous and visible state of intoxication, caused by the improper service of alcohol at J.J. Mallon's. *Id.* at ¶ 66.

26.    On April 16, 2022, at approximately 8:00 p.m., while at J.J. Mallon's located at 36 Girard Avenue, Philadelphia, PA, Lakey was allegedly carelessly, negligently, recklessly, and/or intentionally knocked to the ground by an employee, agent, or patron of J.J. Mallon's, while in a dangerous and visible state of intoxication caused by the improper service of alcohol by the Defendants which rendered him incapable of protecting himself. *Id.* at ¶¶ 67.

27.    As a result of being knocked to the ground by an employee, agent, or patron of J.J. Mallon's, Lakey struck his head on the floor inside J.J. Mallon's, or on the pavement just outside of J.J. Mallon's, which resulted in Lakey's claimed injuries. *Id.* at ¶¶ 68-69.

28.    It is alleged that the Defendants repeatedly served alcohol to Lakey, despite his extreme high level of intoxication, which was in direct violation of the laws of Pennsylvania, including the Pennsylvania Liquor Code, commonly known as the Pennsylvania Dram Shop Act. *Id.* at ¶¶ 76-77.

29.    The service of alcohol to Lakey by the Defendants was allegedly done willfully and with full knowledge of Lakey's actual and visible intoxication, that the service was in direct violation of the statutes and common law of Pennsylvania regarding

the service of alcohol, as well as in violation of the industry standard and internal policies and procedures. *Id.* at ¶¶ 78-80.

30.    It is also alleged that the service of alcohol to Lakey by the Defendants was done willfully and with full knowledge that such service had a high probability of resulting in an accident or incident that was likely to cause serious bodily harm. *Id.* at ¶ 81.

31.    As a result of the carelessness, negligence, and wanton, reckless and willful misconduct, Lakey allegedly suffered various injuries. *Id.* at ¶¶ 88-91.

32.    Count I is a negligence claim against Fishtown. *Id.* at ¶¶ 92-96.

33.    Count II is asserted against Johnny Brendas. *Id.* at ¶¶ 97-101.

34.    Count III is asserted against MJA Holdings, LLC D/B/A The Ambassador ("The Ambassador"). *Id.* at ¶¶ 102-106.

35.    Count IV is asserted against J.J. Mallon's. *Id.* at ¶¶ 107-111.

36.    In the Front Street Lawsuit, Lakey is seeking punitive damages.

**B.    *The McCormick Action***

37.    On or about July 2, 2024, Lakey commenced the McCormick Action against McCormick.

38.    In the McCormick Action, it is alleged that, at all times relevant, McCormick was a principal, officer, manager, agent, and/or employee of 1155-57 N. Front St., Inc. D/B/A J.J. Mallon's and/or J.J. Mallon's (collectively referred to in the Complaint as "J.J. Mallon's"), which owns, operates, and/or manages a bar/restaurant located at 36 W. Girard Avenue, Philadelphia, PA. *See* **Exhibit B**, at ¶ 3.

39.     McCormick was allegedly acting within the course and scope of his employment, agency relationship, with J.J. Mallon's and/or with J.J. Mallon's actual or apparent authority.  *Id.* at ¶ 4.

40.     It is alleged, on or about April 16, 2022, Lakey patronized The Ambassador located at 635 W. Girard Avenue, Philadelphia, PA.  *Id.* at ¶ 9.

41.     While at The Ambassador, Lakey was allegedly served an excessive quantity of alcohol including while visibly intoxicated before being permitted to leave the premises without intervention while in a dangerous and visible state of intoxication.  *Id.* at ¶ 10.

42.     On that same date, Lakey allegedly patronized Fishtown Tavern located at 1301 Frankford Avenue, Philadelphia, PA.  *Id.* at ¶ 11.

43.     While at Fishtown Tavern, Lakey was allegedly served an excessive quantity of alcohol including while visibly intoxicated before being permitted to leave the premises without intervention while in a dangerous and visible state of intoxication.  *Id.* at ¶ 12.

44.     On that date, Lakey also patronized Johnn Brenda's located at 1301 Frankford Avenue, Philadelphia, PA.  *Id.* at ¶ 13.

45.     While at Johnny Brenda's, Lakey was served an excessive quantity of alcohol including while visibly intoxicated before being permitted to leave the premises without intervention while in a dangerous and visible state of intoxication.  *Id.* at ¶ 14.

46.     On April 16, 2022, Lakey patronized J.J. Mallon's located at 36 W. Girard Avenue, Philadelphia, PA.  *Id.* at ¶ 15.

47.    While at J.J. Mallon's, Lakey was allegedly served an excessive quantity of alcohol including while visibly intoxicated before being permitted to leave the premises without intervention while in a dangerous and visible state of intoxication, caused by the improper service of alcohol at J.J. Mallon's.  *Id.* at ¶ 16.

48.    It is alleged, on or about April 16, 2022, at approximately 8:00 p.m., while at J.J. Mallon's located at 36 W. Girard Avenue, Philadelphia, PA, Lakey was allegedly carelessly, negligently, recklessly, and/or intentionally knocked to the ground by an employee, agent or patron of J.J. Mallon's, while in a dangerous and visible state of intoxication caused by the improper service of alcohol by the Defendant, which rendered him incapable of protecting himself.  *Id.* at ¶ 17.

49.    As a result of being knocked to the ground by an employee, agent, or patron of J.J. Mallon's, specifically, McCormick, and as a result of Lakey's dangerous and visible intoxication caused by the improper service of alcohol by the Defendant, Lakey struck his head on the floor inside of J.J. Mallon's, or on the pavement just outside of J.J. Mallon's. *Id.* at ¶ 18.

50.    As a result of the foregoing, Lakey allegedly sustained various injuries.  *Id.* at ¶¶ 19-25.

51.    It is alleged that the service of alcohol to Lakey while intoxicated was in direct violation of the lawsuit of the Commonwealth of Pennsylvania, including the Pennsylvania Liquor Code.  *Id.* at ¶ 27.

52.    It is further alleged that the service of alcohol to Lakey while he was intoxicated was done willfully and with knowledge of Lakey's actual and visible intoxication.  *Id.* at ¶ 28.

53.    Additionally, the service of alcohol to Lakey by the Defendant, while he was intoxicated, was done willfully and with full knowledge that the service was in direct violation of the statutes and common laws of Pennsylvania, as well as in violation of the industry standard and the internal policies and procedures of the Defendant.  *Id.* at ¶¶ 29-30.

54.    The service of alcohol to Lakey by the Defendant was also allegedly done willfully and with full knowledge that such service had a high probability of resulting in an accident or incident that was likely to cause serious bodily harm.  *Id.* at ¶ 31.

55.    It is alleged, as a result of the carelessness, negligence, and wanton, reckless and willful misconduct of Defendant, Lakey suffered various claimed injuries, including mental anguish.  *Id.* at ¶¶ 38-41.

56.    Count I is a negligence claim against McCormick.  *Id.* at ¶¶ 42-46.

57.    In the McCormick Action, Lakey is seeking punitive damages.

**C.    *Consolidation Of The Underlying Actions***

58.    Based upon information and belief, on or about October 10, 2024, the Front Street Action and the McCormick Action were consolidated under docket number 240300216.

**D.    *McCormick's Deposition***

59.    On May 22, 2025, McCormick was deposed in connection with the Underlying Actions.  *See* McCormick Deposition Transcript, attached as **Exhibit C**.

60.    With respect to his position at "JJ Mallons", McCormick testified, *inter alia*, that:

> *Q.  Okay.  What was your position, what were you working as at JJ Mallons on the night in question, April 16th, '22?*

> *A.  I was a bartender.*
>
> *Q.  And you said nobody else was working?*
>
> *A.  No.  It was just me.*

*Id.* pg. 23.

61.     When asked to discuss his recollection of that evening, McCormick testified, *inter alia*, that:

> *A.  Step by step, my recollection over these years was there was a fuss, like the door was being messed with, I walked outside to check what it was. Gentleman was at my door, at the side door, appeared to be very large, started yelling, I remember yelling at me, cursing at me, as I asked him to not bang on my door and shake on my door.  And then he came up into my face and then he hit me.  And I was very scared.*
>
> *Q.  Then what happened?*
>
> *A.  And I defended myself out of fear.*
>
> *Q.  Explain, take me step through step what happened.*
>
> *A.  Okay.  As I said, there was a guy like messing with the door.  I walked outside to check on it.  It was a very large man standing there, who then proceeds to curse at me and yell at me, as I asked him to not do that, and then he hit me.*
>
> *Q.  Please continue.*
>
> *A.  And then out of fear, I chose to defend – I tried to back away.  He gets closer to me.  And then I chose to defend myself.*
>
> *Q.  And this is where I would like you to continue explaining what happened, step by step, just as you did up to this point.  Okay?*
>
> *A.  Okay.*
>
> *Q.  When you say I defended myself, take me though that.  Take me through what you did from the time you say you defended yourself, take me step by step through the point that you call the ambulance.*

*A.  As he approached me again, to probably hit me again, I pushed him and then I hit him, and then he fell to the ground, and as he was falling I was trying to hold him up so as to he would not get injured.  And he fell and hit his head on the ground, and then I proceeded to call the ambulance.*

*Q.  After you pushed him, you said you hit him, correct?*

*A.  Yes.*

*Q.  How many times did you hit him?*

*A.  Just that one time, maybe I don't know how many times I connected, hit on him.  I think it was just once, but I'm not sure.*

*Q.  After you pushed him did he ever hit you again?*

*A.  That was impossible because it was all one motion, and then he fell to the ground.  After I pushed him and then I hit him, out of defense, he fell, so he did not hit me again.*

*Q.  Did you hit him more than once?*

*A.  I don't recall.  I know that I hit him and that he went to the ground and I called the ambulance.*

*Q.  At any point did you consider stopping, walking back into the bar and calling the police?*

*A.  I couldn't at that point.  I was – he kept, he approached, he hit me once and approached me more, and I was scared for my life so I had to defend myself.*

*Q.  After you pushed him away did he ever come towards you again?*

*A.  I pushed him and then swung at him in one motion.  It wasn't like there was a time for him to come right at me again.*

…

*Id.* at pgs. 31-34.

62.     According to McCormick's deposition testimony, Lakey never entered or otherwise patronized "JJ Mallons" on April 16, 2022.  Specifically, McCormick testified:

*Q.  …  We can agree Mr. Lakey did not enter the bar at any point that evening of JJ Mallons, let alone force entry into it, correct?*

> *A. No, he did not, no.*
>
> > ...

*Id*. at pg. 74.

63.    McCormick testified that he was acting within the course and scope of his

employment when he encountered Lakey.  Specifically, McCormick testified, in part:

> *Q. And when you encountered Christopher Lakey on April 16th, 2022 at JJ Mallons were you on duty?*
>
> *A. Yes.*
>
> *Q. And were you acting in the course and scope of your employment??*
>
> *A. Yes.*
>
> *Q. Okay. Throughout the entirety of your encounter with Mr. Lakey you were acting within the course and scope of your employment, correct?*
>
> *A. Does that mean like I was working?  Yes.*
>
> *Q. Okay. That means that you were working, you were on the clock, and your actions were in furtherance of your employment for JJ Mallons.*
>
> *A. In furtherance as in?*
>
> *Q. As in part of your job duties, you were working?*
>
> *A. Yes.*
>
> > ...

*Id*. at pgs. 7-8.

### D.    *The Scottsdale Policy*

64.    Scottsdale issued policy # CPS7474023 to Front Street with effectives dates

November 6, 2021 to November 6, 2022 ("Policy").  A true and correct copy of the Policy

is attached as **Exhibit D.**

65.    The Policy's Schedule of Location at Form UTS-SP-3 08-96, lists the

Designated Premises as "1155 N Front St # 1157, Philadelphia, PA 19123".  *See id.*

66. The Policy's Commercial General Liability Coverage Form, at Form CG 00

01 04 13, states, in part:

> ### Commercial General Liability Coverage Form
>
> ...
>
> *Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.*
>
> ...
>
> ### Section I – Coverages
>
> ### Coverage A – Bodily Injury And Property Damage
>
> #### 1. Insuring Agreement
>
> > ***a.*** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But ... .*
> >
> > ...
> >
> > ***b.*** *This insurance applies to "bodily injury" and "property damage" only if:*
> >
> > > *(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*
> > >
> > > ...

*Id.* at pg. 22.

67. The Policy's Liquor Liability Coverage Form Endorsement, at Form CG

00 33 04 13, states, in part:

> ### Liquor Liability Coverage Form
>
> ...

*Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.*

*...*

### Section I – Liquor Liability Coverage

#### 1.  Insuring Agreement

*a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of the selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. We may, at our discretion, investigate any "injury" and settle any claim or "suit" that may result. But … .*

*...*

*Id.* at pg. 38.

68.    The Policy contains the Assault And/Or Battery Limited Liability Coverage (Limited to Designated Premises) Endorsement, at Form GLS-285a (4-18), which states, in part:

*This endorsement modifies insurance provided under the following:*

**Commercial General Liability Coverage Part**
**Errors And Omissions Coverage Part**
**Liquor Liability Coverage Part**

*…*

| SCHEDULE |
| --- |
| **Designated Premises:**<br>1 - 1155 N FRONT ST # 1157,,PHILADELPHIA,PA,19123,PHILADELPHIA |
| (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.) |

*Throughout this endorsement, the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or*

*organization qualifying as a Named Insured under this policy. The words "we," "us," and "our" refer to the company providing this insurance.*

*The word "insured" means any person or organization qualifying as such under item 3. WHO IS AN INSURED of this endorsement.*

*Except as provided by this endorsement, this policy does not apply to "injury," "bodily injury," "property damage," "damages" or "personal and advertising injury" arising from:*

*1. Assault and/or Battery that occurs at any premises other than the designated premises shown in the Schedule above; or*

*2. Assault and/or Battery that occurs away from the designated premises caused by supervision, hiring, training, organizing, or any other activities conducted on or from the designated premises shown in the Schedule above.*

*3. Assault and/or Battery committed by:*

> *a. Any insured;*

> *b. Any employee/"employee" of any insured; or*

> *c. Any other person.*

*4. The failure to suppress or prevent Assault and/or Battery by any person in 3.a.-c. above;*

*5. The selling, serving or furnishing of alcoholic beverages which results in an Assault and/or Battery; or*

*6. The negligent:*

> *a. Employment;*

> *b. Investigation;*

> *c. Supervision;*

> *d. Hiring;*

> *e. Training;*

> *f. Monitoring;*

> *g. Reporting to the proper authorities, or failure to so report; or*

*h. Retention;*

*of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by paragraphs 3. and 4. above.*

*We will have no duty to defend any "suit" against you seeking "damages" as a consequence of any such injury unless coverage is provided by this endorsement.*

*The coverage provided is described below:*

***INSURING AGREEMENTS***

*For the premium shown below, we agree to afford coverage with respect to Assault and/or Battery Liability only as indicated on this endorsement and subject to the provisions as set forth in this endorsement at liability limits of $25,000 Each Event and $50,000 Aggregate unless otherwise stated below:*

| LIMITS OF LIABILITY | COVERAGE |
|---|---|
| $ _____ 25,000_ Each Event | Assault and/or Battery Liability |
| $ _____ 50,000_ Aggregate | |
| $ _____ TOTAL PREMIUM | |

*1. Coverages – Assault And/Or Battery Liability*

*We will pay on your behalf all sums which you shall become legally obligated to pay as damages because of "injury," "bodily injury," "property damage," "damages" or "personal and advertising injury" to any person arising out of Assault and/or Battery only if the "injury," "bodily injury," "property damage," "damages" or "personal and advertising injury";*

*a. Takes place at the designated premises; and*

*b. Occurs during the policy period.*

*We will have the right and duty to defend any suit against you seeking such "damages," even if any of the allegations of the suit are groundless, false or fraudulent and may make such investigation and such settlement of any claim or suit as we deem expedient, but we shall not be obligated to pay any claim or judgment or to defend any suit after the applicable Limit of Liability shown in this endorsement has been exhausted. However, we will have no duty to*

*defend the insured against any suit seeking "damages" to which this insurance does not apply.*

*2. Exclusions*

*This endorsement does not apply to:*

*a. Liability of others assumed by you under any contract or agreement, either oral or in writing, unless specifically endorsed hereon;*

*...*

*d. Any claim for punitive or exemplary damages; or*

*...*

*3. Who Is An Insured*

*Each of the following is an insured under this insurance to the extent set forth below:*

*...*

*c. If the Named Insured is designated in the Declarations as other than an individual, partnership or joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.*

*...*

*e. Your "employees," other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for ...*

*...*

*4. Limits of Liability*

*Regardless of the number of insureds under this policy, our liability is limited as follows:*

*The Limit of Liability stated in this endorsement as applicable to each "Event" is the most we will pay for all damages arising out of "injury," "bodily injury," "property damage," "personal and*

*advertising injury" or "errors or omissions" because of assault and/or battery, regardless of the number of insureds, persons injured, claims made or suits brought or persons or organizations making claims or bringing suits. The Limit of Liability stated above as Aggregate, subject to the above provision regarding each Event, is the total limit of our liability under this coverage for all "damages" in any policy period.*

*5. Definitions*

*"Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death, resulting from any of these at any time.*

*"Damages" means a monetary judgment, award, or settlement, including damages for death, which are payable because of injury to which this insurance applies. However, damages do not include criminal restitution.*

*"Damages" shall not include:*

*a. Amounts paid to you as fees or expenses for services performed which are to be reimbursed or discharged as a part of the judgment or settlement; or*

*b. Judgments or awards arising from acts deemed uninsurable by law.*

*"Injury" means damages because of "bodily injury" and "property damage," including damages for care, loss of services or loss of support.*

*"Event" means an act or series of acts based on or arising out of the same assault and/or battery.*
*…*

*6. Other Insurance*

*If there is other valid and collectible insurance available to you for "damages" covered under this endorsement, this insurance is excess over such other insurance.*
*…*

*Id.* at pgs. 66-70.

69.    The Policy contains the Punitive Or Exemplary Damage Exclusion, at Form

UTS-74g (8-95), which states:

*In consideration of the premium charged, it is agreed that this policy does not apply to a claim of or indemnification for punitive or exemplary damages.*

*Punitive or exemplary damages also include any damages awarded pursuant to statute in the form of double, treble or other multiple damages in excess of compensatory damages.*

*If suit is brought against any insured for a claim falling within coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then the Company will afford a defense to such action; however, the Company will have no obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.*

...

*Id.* at pg. 86.

### E.    *Scottsdale's Reservation Of Rights*

70.    On or about November 6, 2024, Scottsdale issued a reservation of rights letter to Front Street, in which it agreed to provide a defense to Front Street, in the Front Street Action, pursuant to a strict reservation of rights.  A true and correct copy of Scottsdale's November 6, 2024 Reservation of Rights Letter is attached as **Exhibit E**.

71.    On or about November 6, 2024, Scottsdale issued a reservation of rights letter to McCormick, in which it agreed to provide a defense to McCormick, in the McCormick Action, pursuant to a strict reservation of rights.  A true and correct copy of Scottsdale's November 6, 2024 Reservation of Rights Letter is attached as **Exhibit F**.

72.    On or about December 3, 2025, Scottsdale issued a supplemental reservation of rights letter to Front Street in connection with the Front Street Action.  A true and correct copy of Scottsdale's December 3, 2025 Reservation of Rights Letter is attached as **Exhibit G**.

73.    On or about December 3, 2025, Scottsdale issued a supplemental reservation of rights letter to McCormick in connection with the McCormick Action.  A

true and correct copy of Scottsdale's December 3, 2025 Reservation of Rights Letter is attached as **Exhibit H**.

### COUNT I – Declaratory Judgment Against Front Street and McCormick

**Insurance Coverage Available to Front Street and McCormick For The Underlying Actions, Is Limited To The $25,000 Sublimit Of Insurance Under The Policy's Assault And/Or Battery Limited Liability Coverage Endorsement**

74.    Scottsdale repeats each of its previous averments as though they were set forth in full in this count.

75.    The Policy's Assault And/Or Battery Limited Coverage (Limited to Designated Premises) Endorsement ("Endorsement") states, in part, that except as provided by this Endorsement, the Policy does not provide coverage for, *inter alia*, "injury", "bodily injury", or "damages" arising from:  (1)  Assault and/or Battery that occurs at any premises other than the designated premises shown in the Schedule; (2)  Assault and/or Battery that occurs away from the designated premises caused by supervision, hiring, training, organizing, or any other activities conducted on or from the designated premises shown in the Schedule; (3)  Assault and/or Battery committed by any insured, any employee/"employee" of any insured, or any other person; (4) The failure to suppress or prevent Assault and/or Battery by any person in 3.a.-c.; (5) The selling, serving, or furnishing of alcoholic beverages which results in an Assault and/or Battery; or (6) The negligent employment, investigation, supervision, hiring, training, monitoring, reporting to the proper authorities, or failure to so report, or retention, of a person for whom any insured is, ever was, legally responsible and whose conduct would be excluded by paragraphs 3. and 4. above.  *See* **Exhibit D**, pg. 66.

76.     The Endorsement further states, in part, that Scottsdale will have no duty to defend any "suit" against the Named Insured seeking "damages" as consequence of any of the aforementioned injuries unless coverage is provided by this Endorsement.  *See id.*

77.     The Endorsement's Insuring Agreements provide limited coverage and state, in part, that Scottsdale agrees to afford coverage with respect to Assault and/or Battery Liability only as indicated by this Endorsement and subject to the provisions as set forth in this Endorsement at liability limits of, *inter alia*, $25,000 Each Event.  *See id.*

78.     Specifically, the Endorsement's 1. Coverages – Assault And/Or Battery Liability section states, in part, that Scottsdale will pay on the Named Insured's behalf all sums which the Named Insured shall become legally obligated to pay as damages because of "injury", "bodily injury", or "damages" to any person arising out of Assault and/or Battery if the "injury", "bodily injury", or "damages":  (a) takes place in the designated premises, and (b) occurs during the policy period.  *See id.*

79.     As a matter of Pennsylvania law, if a term is not defined in an insurance policy, the term is defined by its plain and ordinary meaning.

80.     The Endorsement's 1. Coverages – Assault And/Or Battery Liability section also states, in part, that Scottsdale will not be obligated to pay any claim or judgment or to defend any suit after the Limit of Liability shown in this Endorsement has been exhausted. *See id.*

81.     Further, the Endorsement's 4. Limits of Liability section states, in part, that the Limit of Liability stated in this Endorsement, as applicable to each "Event", i.e., $25,000, is the most Scottsdale will pay for all damages arising out of, *inter alia*, "injury" or "bodily injury" because of assault and/or battery, regardless of the number of insureds,

claims made or suits brought, or persons or organizations making claims or bringing suits. *See id.*

82.    Here, in the Front Street Action, it is alleged, on April 16, 2022, Lakey patronized J.J. Mallon's.  **Exhibit A**, ¶ 65.

83.    It is alleged that, while at J.J. Mallon's, Lakey was served an excessive quantity of alcohol, including while visibly intoxicated, before being permitted to leave the premises without intervention while in a dangerous and visible state of intoxication, allegedly caused by the improper service of alcohol at J.J. Mallon's.  *Id.* at ¶ 66.

84.    It is alleged, on that date, while at J.J. Mallon's, Lakey was knocked to the ground by an employee, agent, or patron of J.J. Mallon's.  *Id.* at ¶ 67.

85.    It is further alleged, as a result of being knocked on the ground by an employee, agent, or patron of J.J. Mallon's, Lakey struck his head on the floor inside of J.J. Mallon's or on the pavement outside J.J. Mallon's, which resulted in his claimed damages.  *Id.* at ¶¶ 68-69.

86.    Here, in the McCormick Action, it is alleged, on April 16, 2022, Lakey patronized J.J. Mallon's.  *See* **Exhibit B** at ¶ 15.

87.    It is alleged that, while at J.J. Mallon's, Lakey was served an excessive quantity of alcohol, including while visibly intoxicated, before being permitted to leave the premises without intervention while in a dangerous and visible state of intoxication, allegedly caused by the improper service of alcohol at J.J. Mallon's.  *Id.* at ¶ 16.

88.    It is alleged, on that date, while at J.J. Mallon's, Lakey was knocked to the ground by an employee, agent, or patron of J.J. Mallon's.  *Id.* at ¶ 17.

89. It is further alleged, as a result of being knocked on the ground by an employee, agent, or patron of J.J. Mallon's, Lakey struck his head on the floor inside of J.J. Mallon's or on the pavement outside J.J. Mallon's, which resulted in his claimed damages. *Id*. at ¶¶ 18-19.

90. Additionally, McCormick testified that on April 16, 2022, he was working as a bartender at J.J. Mallons. *See* **Exhibit C**, pg. 23.

91. With respect to the altercation involving Lakey, McCormick testified on the night in question, there was someone outside the door of the bar. *Id.* at pgs. 31-34.

92. McCormick walked outside to check on the situation. McCormick testified there was a man, i.e., Lakey, outside the door, who started yelling and cursing at McCormick. *Id.*

93. McCormick testified that he asked Lakey to not bang and shake the door. *Id.*

94. At that point, McCormick testified that Lakey came up to his face and hit him. *Id.*

95. McCormick testified that Lakey subsequently approached McCormick to potentially hit McCormick again, and, at this time, McCormick pushed and hit Lakey, which resulted in Lakey falling to the ground hitting his head. *Id.*

96. Accordingly, The Policy's Assault And/Or Battery Limited Coverage (Limited to Designated Premises) Endorsement applies to the Underlying Actions, and the maximum amount of insurance available, under the Policy, to Front Street and McCormick, for the Underlying Actions, is $25,000.

### COUNT II – Declaratory Judgment Against Front Street and McCormick

**The Policy Does Not Provide Coverage For Punitive Damages**

97.    Scottsdale repeats each of its previous averments as though they were set forth in full in this count.

98.    The Policy contains the Punitive Or Exemplary Damages Endorsement, which states, in part, that the Policy does not apply to a claim of or indemnification for punitive or exemplary damages.  *See* **Exhibit D**, pg. 86.

99.    The Policy's Assault And/Or Battery Limited Liability Coverage (Limited to Designated Premises) Endorsement, Insuring Agreements, 2. Exclusions section states that the Endorsement does not apply to, *inter alia*, any claim for punitive or exemplary damages.  *Id.* at pgs. 66-70.

100.    In the Underlying Actions punitive damages are being sought.  *See* **Exhibit A** and **Exhibit B**.

101.    Accordingly, the Policy does not provide coverage for any punitive damages sought in connection with the Underlying Actions.

**WHEREFORE**, Plaintiff Scottsdale Insurance Company demands judgment in its favor, together with costs of court, and the following declarations:

a.    that the Policy's Assault And/Or Battery Limited Liability Coverage (Limited to Designated Premises) Endorsement applies to the Underlying Actions;

b.    that Policy's Assault And/Or Battery Limited Liability Coverage (Limited to Designated Premises) Endorsement's $25,000 Each Event Limits Of Liability is the maximum limit of insurance available to Front Street and McCormick for the Underlying Actions;

c.    the Policy does not provide coverage for punitive damages; and

d.    that the Court grants Scottsdale such other and further relief as it deems just

and proper.

GOLDBERG SEGALLA LLP


By: */s/ Colleen E. Hayes*
     Colleen E. Hayes, Esq.  # 312154
     Mailing Address:  PO Box 360, Buffalo NY
     14201

     1700 Market Street, Suite 3232
     Philadelphia, PA 19103-3907
     Telephone:  267-519-6800

Dated: December 29, 2025